Davis and Stadtmueller, LLP
Ronald E. Stadtmueller (SBN 140720)
Kathryn M. Otto (SBN 156948)
10755 Scripps Poway Pkwy., #370
San Diego, CA 92131
Telephone: (858) 564-9310
ronstadtmueller@aol.com

Attorneys for Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>**ADELL YOUNG, JR.**,<br><br>Debtor. | Case No.: **15-07570-CL7**<br><br>Chapter 7<br><br>Adv. No.: |
| **RONALD E. STADTMUELLER, Chapter 7 Trustee**,<br><br>Plaintiff,<br>v.<br><br>**ADELL YOUNG, JR.**,<br><br>Defendant. | **COMPLAINT FOR REVOCATION OF DISCHARGE 11 U.S.C. § 727(e)(2)** |

COMES NOW, RONALD E. STADTMUELLER, Chapter 7 trustee in the above-captioned bankruptcy proceeding and plaintiff herein, by and through his counsel, as and for his Complaint against ADELL YOUNG, JR., defendant herein, respectfully alleges on behalf of the estate of debtors ADELL YOUNG, JR. as follows:

## JURISDICTION AND VENUE

1. This proceeding arises in the bankruptcy case *In re Adell Young, Jr.*, Case No. 15-07570-CL7 (the "**BK Case**"), which was commenced on November 25, 2015 (the "**Petition Date**"),

when the debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code (The "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of California.

2. The Adversary Proceeding herein is for revocation of discharge under Bankruptcy Code Section 727(e)(2) and arises out of and relates to the BK Case of the docket of this Court.

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 157 and 1334 and the Bankruptcy Code.

4. This adversary proceeding is a core proceeding for which the Court is authorized to hear and determine all matters in accordance with, inter alia, 28 U.S.C. Section 157(b)(2)(A) and (J), subject to review under 28 U.S.C. Section 158.

5. Venue is proper in the Southern District of California pursuant to 28 U.S.C. Section 1409 because the debtor's BK Case is pending in this Court.

6. This Court has authority to enter final orders herein.

## PARTIES

7. Plaintiff Ronald E. Stadtmueller is the court-appointed Chapter 7 Trustee ("**Plaintiff**") of the bankruptcy estate of Adell Young, Jr. (the "**Estate**").

8. Defendant Adell Young, Jr. ("**Defendant**") filed for protection under Chapter 7 of the Bankruptcy Code on November 25, 2015.

9. Plaintiff is informed and believes and thereon alleges that Defendant is the debtor in the related Chapter 7 BK Case and is an individual who at all times mentioned herein was a resident of the State of California and resided in San Diego County.

## CLAIM FOR RELIEF
## Revocation of Discharge
## (11 U.S.C. Section 727(e)(2))

10. Plaintiff incorporates all preceding and subsequent allegations into this cause of action as though fully set forth herein.

11. Assets of the estate include, but are not limited to, a 2007 Mercedes Benz E-350 ("**Vehicle**"), with a scheduled value of $7,575.00. (BK Case Docket No. 1, p. 11.) Defendant, who was represented by counsel, did not claim the Vehicle exempt. (BK Case Docket No. 1, p. 12.)

12. At the First Meeting of Creditors on December 30, 2015, Plaintiff clearly advised both Defendant and his special appearance counsel (attorney Gary Sehnert) of the possibility of the lien avoidance on the Vehicle, specifically explaining that should the lien be avoided, Plaintiff would liquidate the Vehicle to pay creditors.

13. After the First Meeting of Creditors Plaintiff reviewed the purchase contract and DMV records for the Vehicle and contacted the lender of the Vehicle, Lobel Financial Corporation ("**Lobel**"), requesting verification of the timeliness of Lobel's lien or a release of said lien under 11 U.S.C. § 547(c)(3).

14. Lobel quickly acknowledged its lien on the Vehicle was not timely perfected.

15. On January 20, 2016 Plaintiff contacted Defendant's bankruptcy counsel of record, Nicholas Wajda ("**Wajda**"), via email to inform him of Lobel's acknowledgement that the lien was not timely perfected, and to inquire whether Defendant was interested in "buying" the estate's interest or whether Defendant had any opposition to the estate selling the "lien avoidance" back to Lobel, thus allowing them to retain their lien, if such resolutions were court-approved.

16. Plaintiff further advised Defendant's counsel in that same January 20, 2016 email that if such resolution could not be reached, Defendant must turn the Vehicle over to the estate for liquidation.

17. In that same January 20, 2016 email Plaintiff asked for a decision from Defendant by the close of business on the following day.

18. Also on January 20, 2016 Defendant's counsel Wajda inquired why Defendant could not now claim the Vehicle exempt, and Plaintiff informed him of the exclusion to exemption where an asset is recovered pursuant to a 11 U.S.C. § 547 preference.

19. Plaintiff further offered for Defendant to buy the Vehicle from the estate, and Attorney Wajda indicated he was waiting to hear back from Defendant.

20. On or about January 21, 2016, Lobel informed Plaintiff that Lobel would release the title of the Vehicle to the estate.

21. Plaintiff did not hear back from Defendant as requested, so on January 26, 2016 Plaintiff again contacted Defendant's counsel and asked for a decision.

22. On January 26, 2016 Defendant's counsel informed Plaintiff that Defendant was looking into getting the money to purchase the Vehicle back, and needed more time.

23. Also on January 26, 2016 Plaintiff agreed to provide Defendant additional time but requested a clear plan to be memorialized in a settlement agreement with payment terms.

24. In the January 26, 2016 email to Defendant's counsel Wajda, Plaintiff also requested that the Plaintiff be added as an additional insured to Defendant's automobile insurance policy that week.

25. Plaintiff has not received any verification that Defendant complied with his request to add him as an insured on Defendant's automobile insurance policy.

26. In fact, Plaintiff did not hear back from Defendant or his counsel for nearly a month.

27. Also on January 26, 2016, Lobel contacted Plaintiff to inform him that Lobel would be forwarding the paper title to the Vehicle to Plaintiff once it was retrieved by Lobel.

28. Lobel further confirmed on January 26, 2016 that it considered this matter settled in full with regards to Lobel.

29. On or about February 23, 2016 Plaintiff received the paper title on the Vehicle from Lobel, releasing title to the bankruptcy estate.

30. Accordingly, on February 23, 2016 Plaintiff contacted Defendant's counsel to inform him that Plaintiff had received title to the Vehicle from Lobel and to demand turnover of the Vehicle to Fischer Auction for liquidation.

31. Defendant's counsel Wajda questioned the turnover, alleging he "*had spoken to Lobel and they informed [him] that [the Trustee's] information was not accurate, that they had a valid lien perfected against the vehicle and that they are looking to reaffirm this debt with the debtor.*"

32. Defendant's counsel further alleged in his February 23, 2016 communication with Plaintiff that Lobel told him they "made a mistake" and had perfected their lien *over a year ago*.

33. The purchase contract for the Vehicle was dated August 15, 2015 – only six (6) months prior to such communication between Lobel and Defendant's counsel regarding perfection of the lien.

34. Defendant's counsel also advised Plaintiff that Lobel would be sending Plaintiff proof of its lien and amending their proof of claim if needed.

35. Plaintiff informed Defendant's counsel Wajda that Lobel had already sent him the title, but that he would investigate Wajda's claims.

36. On February 25, 2016, Plaintiff forwarded to Defendant's counsel an email message between Plaintiff and Lobel, verifying that the title had been provided to Plaintiff and that the lien release was being forwarded.

37. Plaintiff again asked Defendant, through his counsel, for either a plan to "buy out" the estate's interest in the Vehicle or for Defendant to arrange for its surrender by noon the following day.

38. No response was forthcoming from Defendant or his counsel.

39. On March 1, 2016 Plaintiff again contacted Defendant's counsel to request a response to his last email.

40. Defendant's counsel Wajda responded that he wanted to contact Lobel to confirm Plaintiff's version of the facts, stating he was "getting a different story from others that [he] spoke with at Lobel."

41. On March 1, 2016 Plaintiff asked that the Vehicle to be turned over to the auction house by the end of the week, in light of the fact Defendant was aware of the lien issue since at least January 20, 2016 and had not responded to Plaintiff with Defendant's position on buying out the Vehicle.

42. The next day, at 4:19 p.m. on March 2, 2016, Defendant's counsel sent Plaintiff another email stating he was still waiting to hear back from Lobel on the matter, but offered a payment plan to pay off the Vehicle that extended over the course of a year and a half. Plaintiff refused such plan, as the auction would provide the creditors with funds to the estate much sooner. Again, Plaintiff advised that the Vehicle must be turned over. No response was forthcoming from Defendant or his counsel.

43. On March 9, 2016, Plaintiff filed an *Ex Parte* Application for Authority to Employ General Counsel to recover the Vehicle for the estate (BK Case Docket No. 17), which Application was granted on March 11, 2016. (BK Case Docket No. 19.)

44. On March 11, 2016, Plaintiff's general counsel in the underlying BK Case confirmed with Lobel that the lien and title to the Vehicle was released to Plaintiff.

45. Lobel further informed Plaintiff's counsel that his notes indicate he spoke with the office of Defendant's counsel on March 2, 2016 and that it had imparted this same information to such office.

46. On March 14, 2016 Plaintiff again emailed Defendant's counsel to relay this latest confirmation from Lobel and to again demand that Defendant turnover the Vehicle. Again, Defendant failed to respond to such demand for turnover.

47. Accordingly, on March 23, 2016, Plaintiff filed a Motion to Compel Cooperation and Turn Over Property ("**Motion to Compel**"), which was noticed for hearing on April 25, 2016. (BK Case Docket Nos. 21, 22.)

48. On April 7, 2016 Defendant was served with notice of the Motion to Compel hearing by U.S. Mail, first class, postage paid. (BK Case Docket No. 26.)

49. Mail to Defendant at such address of record has not been returned to Plaintiff.[1]

50. The Defendant is obligated under Federal Rule of Bankruptcy Procedure 4002(a)(5) to file a statement of any change of the debtor's address.

51. Defendant has not filed any statement of any change of address.

52. No opposition to the Motion to Compel was filed by Defendant.

53. On or about April 19, 2016, Plaintiff received an email from Defendant's counsel Wajda advising that Defendant had not been returning his phone calls or emails.

54. Defendant's counsel offered to stipulate to the turnover of the Vehicle, but Plaintiff questioned how a stipulation was possible without Defendant's consent.

55. Plaintiff further advised that should Defendant fail to comply with the Order, the only recourse would be a motion for contempt and/or revocation of discharge against Defendant.

56. The Court issued a Tentative ruling granting Plaintiff's Motion to Compel (BK Case Docket No. 27), and the Order After Hearing on Motion to Compel Cooperation and Turn Over Property was entered on April 26, 2016 ("**Order**"). The Order directed Defendant to immediately turn the Vehicle over to Plaintiff. (BK Case Docket No. 29).

57. The entered Order was served upon Defendant and his counsel through the Court's BNC service. (BK Case Docket No. 30).

---

[1] Plaintiff was surprised that an attempt to personally serve Defendant on April 6, 2016 was unsuccessful in that Plaintiff was advised by the person answering the door at Defendant's address of record that Defendant no longer lived at that address.

58. Upon receipt of said Order, on April 26, 2016 Plaintiff sent Defendant a letter enclosing the Order and requesting that Defendant immediately contact his office to surrender the Vehicle. Plaintiff further advised Defendant that failure to comply with the Order would result in a motion for contempt wherein Plaintiff would request the award of attorneys' fees and costs, as well as sanctions for failure to cooperate with the administration of the bankruptcy estate, in addition to a request for revocation of Defendant's discharge. The letter was sent to Defendant's address per the Court record, and Defendant's counsel Wajda was copied on said letter.

59. On May 4, 2016 Plaintiff again contacted Defendant's counsel via email to inquire whether such counsel had been in contact with Defendant regarding turnover of the Vehicle. Defendant's counsel responded that he had not.

60. No mail sent to Defendant via U.S. Postal Service at his address provided on the Court record has been returned to Plaintiff. Therefore, Plaintiff is informed and believes and thereon alleges Defendant has received said correspondence, including the Order.

61. Plaintiff is unaware of the current condition or value of the Vehicle, as it has been in Defendant's possession for months after demand was made for turnover. Such delay in turnover is due solely to the actions and failures of Defendant and his counsel.

62. Defendant has been recurrent in his failure to comply with the Order of this Court.

63. Accordingly, on May 11, 2016 Plaintiff filed a Motion for Civil Contempt for Failure to Comply with Court Order and Request for Sanctions against Defendant ("**Motion for Contempt**"). This Motion for Contempt requests sanctions to compensate the estate for the delays and expense Defendant's failures to comply have cost the bankruptcy estate.

64. To date, despite multiple demands from Plaintiff, Defendant has refused to turn over the Vehicle in accordance with the Order of this Court.

65. Plaintiff alleges that Defendant has refused to obey a lawful order of this Court.

66. Plaintiff further alleges that Defendant has retained property of the estate and knowingly and fraudulently failed to deliver or surrender such property to Plaintiff.

67. Defendant's Discharge Order was entered on March 1, 2016. (BK Docket No. 15.)

**PRAYER FOR RELIEF**

WHEREFORE, RONALD E. STADTMUELLER, Plaintiff and trustee herein, prays for judgment against Defendant as follows:

1. That Defendant's discharge of debts in the related Chapter 7 BK Case, Case No. 15-07570-CL7, be revoked;

2. That Plaintiff be awarded reasonable attorney's fees and costs of suit;

3. For such other relief as the Court deems necessary and proper.

Dated: May 18, 2016 DAVIS & STADTMUELLER, LLP

By: /s/ Ronald E. Stadtmueller
Ronald E. Stadtmueller,
Attorneys for Plaintiff